# *IN THE DISTRICT COURT OF THE UNITED STATES*

# *for the Western District of New York*

|  |  |
|---|---|
| | APRIL 2021 GRAND JURY<br>(Impaneled April 14, 2021) |
| **THE UNITED STATES OF AMERICA** | **INDICTMENT** |
| *-vs-* | Violations: |
| **TONY KIRIK a/k/a**<br>**Anatoliy Kirik** | Title 18, United States Code,<br>Sections 2, 371, 1001(a), 1028A(a)(1),<br>and 1519<br>(8 Counts) |

## INTRODUCTION

**The Grand Jury Charges That:**

At all times relevant to this Indictment:

1. The defendant, TONY KIRIK a/k/a Anatoliy Kirik ("KIRIK"), owned and managed a trucking business located at 105 McLaughlin Road, Rochester, New York, in the Western District of New York, which transported goods for customers across the United States. KIRIK operated his trucking business using various corporate entities, including Orange Transportation Services, Inc. ("Orange Transportation Services") and Dallas Logistics, Inc. ("Dallas Logistics"), that were interstate motor carriers regulated by the Federal Motor Carrier Safety Administration ("FMCSA").

2. Person 1 and Person 2, individuals known to the Grand Jury, were employed at KIRIK's trucking business.

3. The FMCSA was an agency of the United States Department of Transportation ("USDOT"), and part of the executive branch of the Government of the United States. It had jurisdiction over, and regulated, motor carriers that operated in interstate commerce. Regulated motor carriers were required to provide truthful and accurate information about their businesses and operations to the FMCSA, and were subject to periodic audits, compliance reviews, and inspections by the FMCSA.

4. A motor carrier operating in interstate commerce must have obtained a USDOT number, which was a unique identifier that aided the FMCSA in collecting and monitoring safety and other information. To obtain a USDOT number, a motor carrier must have completed and submitted, and periodically updated, under penalties of perjury, Form MCS-150, Motor Carrier Identification Report. In addition, many motor carriers must have obtained a MC Number from the USDOT, which was used to determine, among other things, the type(s) and level(s) of insurance required. To obtain a MC Number, a motor carrier must have completed, under penalties of perjury, Form OP-1, Application For Motor Property Carrier And Broker Authority.

5. The FMCSA assigned one of four possible safety ratings to a motor carrier: Unrated, Satisfactory, Conditional, and Unsatisfactory. When a new motor carrier was first established, it was assigned a rating of Unrated until the FMCSA completed a safety review. A rating of Satisfactory meant that the motor carrier had adequate safety management controls to meet the safety fitness standard. A rating of Conditional meant that the motor carrier did not have adequate safety management controls in place to meet the safety fitness standard. A rating of Unsatisfactory meant that the motor carrier did not have adequate safety management controls in place and had negative occurrences.

6. A motor carrier's safety rating affected its insurance rates and ability to compete for business. An Unrated motor carrier was eligible for more favorable insurance rates than a Conditional motor carrier which had a documented history of safety concerns.

7. To prevent motor carriers from concealing poor safety records by changing legal names and entities, motor carriers were required to identify to the FMCSA affiliated or reincarnated entities. Notably, the safety rating of a new affiliated or reincarnated motor carrier entity remained the same as its predecessor entity and was not Unrated.

## COUNT 1
### (Conspiracy)

**The Grand Jury Further Charges That:**

1. The allegations contained in the Introduction are realleged and incorporated herein by reference.

### OBJECTS OF THE CONSPIRACY

2. Between in or about October 2012 and in or about January 2018, the exact dates being unknown to the Grand Jury, in the Western District of New York, and elsewhere, the defendant, TONY KIRIK a/k/a Anatoliy Kirik, did knowingly, willfully and unlawfully combine, conspire and agree with Dallas Logistics, Person 1, Person 2, and others known and unknown to the Grand Jury,

(a) to defraud the United States and the FMCSA, an agency of the United States, by interfering with and obstructing by means of deceit, craft, and trickery, the lawful and legitimate governmental functions and rights of the FMCSA, that is, the regulation of motor carriers that operated in interstate commerce, the collection of truthful and accurate

information from regulated motor carriers, and the conducting of periodic audits, compliance reviews, and inspections of motor carriers;

and to commit the following offenses against the United States, that is,

 (b) in matters within the jurisdiction of the FMCSA, an agency within the executive branch of the Government of the United States, to knowingly and willfully (i) falsify, conceal and cover up, by trick, scheme and device, material facts; (ii) make materially false, fictitious and fraudulent statements and representations; and (iii) make and use false writings and documents knowing the same to contain materially false, fictitious and fraudulent statements and representations, in violation of Title 18, United States Code, Section 1001(a); and

 (c) to knowingly alter, destroy, mutilate, conceal, cover up, falsify and make a false entry in any record, document and tangible object with the intent to impede, obstruct and influence the investigation and proper administration of matters within the jurisdiction of the FMCSA, an agency of the United States, in violation of Title 18, United States Code, Section 1519.

 3. The objects of the conspiracy were for KIRIK and others, by using false and fraudulent statements, representations and documents, to conceal from the FMCSA that Dallas Logistics was owned and managed by KIRIK, was part of KIRIK's trucking business, and was affiliated with the other corporate entities used by KIRIK in his trucking business, including Orange Transportation Services. KIRIK concealed from the FMCSA that Dallas Logistics was part of KIRIK's trucking business so that the FMCSA would not link Dallas Logistics with Orange Transportation Services and other affiliated entities and assess it with

a Conditional safety rating. By obtaining a more favorable safety rating, Dallas Logistics lowered its costs, including insurance premium expenses, and increased its revenue from customers, some of whom were unwilling to use a motor carrier with a Conditional safety rating.

## MEANS AND METHODS OF THE CONSPIRACY

The objects of the conspiracy were accomplished through the following means and methods:

11. After Orange Transportation Services received a Conditional safety rating from the FMCSA, resulting in higher operating costs and lower revenue from its customers, KIRIK established Dallas Logistics and operated his trucking business as Dallas Logistics.

12. To avoid having Dallas Logistics inherit the Conditional safety rating assigned to Orange Transportation Services and other affiliated entities, KIRIK and others misrepresented to the FMCSA that Dallas Logistics was a separate and independent trucking business not affiliated with KIRIK's trucking business.

13. KIRIK and others were able to conceal from the FMCSA that Dallas Logistics was affiliated with KIRIK's trucking business by (a) falsely claiming that Person 1 was the owner and president of Dallas Logistics; (b) falsely representing that Dallas Logistics was first located in Texas, and later at a false address in Rochester, New York; and (c) filing false and fraudulent forms with the FMCSA.

14. On or about May 5, 2016, after KIRIK decided to fire Person 1, KIRIK caused Person 1 to execute legal documentation that purported to transfer ownership of Dallas Logistics from Person 1 to KIRIK.

**OVERT ACTS**

In furtherance of the conspiracy, and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Western District of New York, and elsewhere:

15. On or about October 23, 2012, KIRIK caused Form OP-1 (Application For Motor Property Carrier And Broker Authority) for Dallas Logistics to be submitted to the FMCSA, purportedly signed by Person 1, which falsely and fraudulently stated that Dallas Logistics' principal address was in Dallas, Texas, and that Dallas Logistics did not have any relationship with any other FMCSA regulated entity within the past 3 years.

16. On or about October 23, 2012, KIRIK caused Form MCS-150 (Motor Carrier Identification Report) for Dallas Logistics to be submitted to the FMCSA, purportedly signed by Person 1, which falsely and fraudulently represented that Dallas Logistics' principal address was in Dallas, Texas.

17. On or about March 11, 2014, KIRIK caused Person 1, during a meeting in Dallas, Texas, with an FMCSA representative conducting a new entrant safety audit for Dallas Logistics, to deceive the FMCSA representative into believing that Dallas Logistics was an independent trucking business based in Texas and was not affiliated with Orange Transportation Services or any other FMCSA regulated entity.

18. On or about March 26, 2014, and on or about February 26, 2015, KIRIK caused updated Forms MCS-150 for Dallas Logistics to be submitted to the FMCSA, which falsely and fraudulently represented that Dallas Logistics' principal address was in Dallas, Texas, and that Person 1 was the President of Dallas Logistics and had signed the forms.

19. On or about October 23, 2015, KIRIK caused an updated Form MCS-150 for Dallas Logistics to be submitted to the FMCSA, which falsely and fraudulently represented that Dallas Logistics' principal address was in Carrolton, Texas, and that Person 1 was the President of Dallas Logistics and had signed the form.

20. Between on or about October 23, 2015, and on or about November 2, 2015, the exact dates being unknown to the Grand Jury, KIRIK caused Person 1 to travel to Texas to meet with an FMCSA Investigator conducting a compliance review of Dallas Logistics in order to deceive the FMCSA Investigator about Dallas Logistics, including the location of its principal address and its management and control.

21. On or about November 2, 2015, and on or about April 25, 2016, KIRIK caused updated Forms MCS-150 for Dallas Logistics to be submitted to the FMCSA, which falsely and fraudulently represented that Dallas Logistics' principal address was 25 Pixley Industrial Parkway, Gates, New York, and that Person 1 was the President of Dallas Logistics and had signed the forms.

22. Between on or about April 26, 2016, and on or about May 16, 2016, the exact dates being unknown to the Grand Jury, KIRIK caused Person 2 and others to set up a sham office for Dallas Logistics at 25 Pixley Industrial Parkway, Gates, New York, in order to deceive an FMCSA Investigator conducting a compliance review of Dallas Logistics into believing that Dallas Logistics' principal address was 25 Pixley Industrial Parkway, Gates, New York, and that Dallas Logistics was not affiliated with or related to any of the other regulated entities KIRIK used to operate his trucking business, including Orange Transportation Services.

23. On or about April 26, 2016, KIRIK caused Person 2 to meet with an FMCSA Investigator and falsely represent, among other things, that Dallas Logistics was Person 1's business, that Person 1 controlled it, and that its principal address was at 25 Pixley Industrial Parkway, Gates, New York.

24. On or about April 26, 2016, KIRIK caused Person 2 to prepare and sign a letter, on Dallas Logistics letterhead, to a FMCSA Investigator that falsely represented Dallas Logistics' principal address was 25 Pixley Industrial Parkway, Gates, New York, and falsely claimed that the reason Dallas Logistics had originally been reported to the FMCSA as a Texas-based business was that Person 1 intended to relocate to Texas, but that his mother became seriously ill, followed by his father, which prevented Person 1 from relocating to Texas.

25. On or about January 11, 2018, KIRIK caused Person 2 to testify before a federal grand jury as the designated "records custodian" for KIRIK's business entities, and to falsely claim that "[i]t was never concealed" from the FMCSA and the USDOT that Dallas Logistics and Orange Transportation Services were in fact run out of New York.

**All in violation of Title 18, United States Code, Section 371.**

### COUNT 2
### (False Document – Form MCS-150)

**The Grand Jury Further Charges That:**

1. The allegations in the Introduction and Count 1 are realleged and incorporated herein by reference.

2. On or about April 25, 2016, in the Western District of New York, and elsewhere, the defendant, TONY KIRIK a/k/a Anatoliy Kirik, in a matter within the jurisdiction of the executive branch of the Government of the United States, did knowingly and willfully make and use a false writing and document knowing the same to contain materially false, fictitious and fraudulent statements and representations.

3. Specifically, KIRIK did prepare and submit, and did cause to be prepared and submitted, to the FMCSA, a Form MCS-150 for Dallas Logistics which stated and represented that (a) Dallas Logistics' principal address was 25 Pixley Industrial Parkway, Gates, New York; (b) Person 1 was the President of Dallas Logistics; and (c) Person 1 had personally signed the form, whereas, as KIRIK well knew and believed (a) Dallas Logistics' principal address was 105 McLaughlin Road, Rochester, New York; (b) Person 1 was not the President of Dallas Logistics but instead was a figurehead executive only; and (c) Person 1 had not in fact personally signed the form.

**All in violation of Title 18, United States Code, Sections 1001(a)(3) and 2.**

## COUNT 3
**(Falsification of Record – Form MCS-150)**

**The Grand Jury Further Charges That:**

1. The allegations in the Introduction and Counts 1 and 2 are realleged and incorporated herein by reference.

2. On or about April 25, 2016, in the Western District of New York, and elsewhere, the defendant, TONY KIRIK a/k/a Anatoliy Kirik, did knowingly conceal, cover up, falsify and make a false entry in a record and document, that is, a Form MCS-150 for

Dallas Logistics, with the intent to impede, obstruct and influence the investigation and proper administration of a matter within the jurisdiction of the FMCSA, an agency of the United States.

**All in violation of Title 18, United States Code, Sections 1519 and 2.**

## COUNT 4
### (False Document – Letter)

**The Grand Jury Further Charges That:**

1. The allegations in the Introduction and Count 1 are incorporated herein by reference.

2. On or about April 26, 2016, in the Western District of New York, and elsewhere, the defendant, TONY KIRIK a/k/a Anatoliy Kirik, in a matter within the jurisdiction of the executive branch of the Government of the United States, did knowingly and willfully make and use a false writing and document knowing the same to contain materially false, fictitious and fraudulent statements and representations.

3. Specifically, KIRIK did prepare and submit, and did cause to be prepared and submitted to the FMCSA, a letter on Dallas Logistics letterhead, signed by Person 2, that stated and represented that (a) Dallas Logistics' address was 25 Pixley Industrial Parkway, Gates, New York; (b) Dallas Logistics was created as a Texas-based business in order to be run from Texas; and (c) Person 1 intended to relocate to Texas, but was unable to do so because his mother became seriously ill, followed later by Person 1's father, and that "based on these circumstances, Dallas Logistics remains in New York", whereas, as KIRIK well knew and believed (a) Dallas Logistics' address was 105 McLaughlin Road, Rochester, New

York; (b) Dallas Logistics was not created to be a Texas-based trucking company run from Texas; and (c) Person 1 never intended to relocate to Texas to operate Dallas Logistics.

**All in violation of Title 18, United States Code, Sections 1001(a)(3) and 2.**

## COUNT 5
### (Falsification of Record – Letter)

**The Grand Jury Further Charges That:**

1.  The allegations in the Introduction and Counts 1 and 4 are realleged and incorporated herein by reference.

2.  On or about April 26, 2016, in the Western District of New York, and elsewhere, the defendant, TONY KIRIK a/k/a Anatoliy Kirik, did knowingly conceal, cover up, falsify and make a false entry in any record and document, that is, a letter on Dallas Logistics letterhead, signed by Person 2, with the intent to impede, obstruct and influence the investigation and proper administration of a matter within the jurisdiction of the FMCSA, an agency of the United States.

**All in violation of Title 18, United States Code, Sections 1519 and 2.**

## COUNT 6
### (False Statements to FMCSA Investigator)

**The Grand Jury Further Charges That:**

1.  The allegations in the Introduction and Count 1 are realleged and incorporated herein by reference.

11

2. On or about April 26, 2016, the exact date being unknown, in the Western District of New York, the defendant, TONY KIRIK a/k/a Anatoliy Kirik, in a matter within jurisdiction of the executive branch of the Government of the United States, did knowingly and willfully make, and cause to be made, materially false, fictitious and fraudulent statements and representations.

3. Specifically, KIRIK directed Person 2 to make false statements and representations to an FMCSA Investigator who was performing a compliance review of Dallas Logistics that (a) Dallas Logistics was Person 1's business; (b) Person 1 controlled Dallas Logistics; (c) Dallas Logistics was intended to operate out of Texas; and (d) because Person 1's parents fell ill, Person 1 was unable to relocate to Texas to run Dallas Logistics; whereas, as KIRIK well knew and believed (a) Dallas Logistics was not actually Person 1's business; (b) Person 1 did not control Dallas Logistics; (c) Dallas Logistics was never intended to operate out of Texas; and (d) Person 1 never intended at any time to relocate to Texas to run Dallas Logistics.

**All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.**

### COUNT 7
**(Concealment of Material Fact)**

**The Grand Jury Further Charges That:**

1. The allegations in the Introduction and Count 1 are realleged and incorporated herein by reference.

2. Between on or about April 26, 2016, and on or about May 16, 2016, in the Western District of New York, the defendant, TONY KIRIK a/k/a Anatoliy Kirik, in a

matter within the jurisdiction of the executive branch of the Government of the United States, did knowingly and willfully falsify, conceal and cover up by trick, scheme and device material facts.

3. Specifically, KIRIK directed and caused Person 2 and others, known and unknown to the Grand Jury, to stage a sham office for Dallas Logistics located at 25 Pixley Industrial Parkway, Gates, New York, to conceal from the FMCSA the material facts (a) that Dallas Logistics was affiliated and associated with KIRIK and his trucking business, including Orange Transportation Services and other FMCSA regulated entities, and (b) that Dallas Logistics was actually located and operated from KIRIK's trucking business at 105 McLaughlin Road, Rochester, New York.

**All in violation of Title 18, United States Code, Sections 1001(a)(1) and 2.**

## COUNT 8

**(Aggravated Identity Theft)**

**The Grand Jury Further Charges That:**

1. The allegations in the Introduction and Counts 1 and 2 are realleged and incorporated herein by reference.

2. On or about April 25, 2016, during and relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), that is, violation of Title 18, United States Code, Section1001(a)(3) as alleged in Count 2 of this Indictment, the defendant, TONY KIRIK a/k/a Anatoliy Kirik, did knowingly transfer, possess and use, without lawful authority, a means of identification of another person, that is, the name of Person 1.

**All in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.**

DATED: Rochester, New York, April 22, 2021.

                                      JAMES P. KENNEDY, JR.
                                      United States Attorney

BY:    s/JOHN J. FIELD
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        100 State Street, Suite 500
        Rochester, New York 14614
        (585) 399-3900
        John.Field@usdoj.gov

A TRUE BILL:

s/Foreperson
FOREPERSON